## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MONICA D. DERAMUS** | ) | CASE NO. |
| **1198a Schneiders Crossing Road, Northwest** | ) | |
| **Dover, Ohio 44622** | ) | **JUDGE** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| **McCleery Law Firm, LLC** | ) | |
| **203 Front Ave., SE** | ) | |
| **New Philadelphia, Ohio 44663** | | |

Now comes Plaintiff Monica D. DeRamus, by and through un dersigned counsel,  and for her several causes of action against Defendant McCleery Law Firm, LLC states as follows.

### PARTIES AND JURISDICTION

1. Plaintiff Monica D. DeRamus is 61 years olf female, of African American descent  and was and is a resident of the above address. and has been employed by McCleery Law Firm, LLC as an attrorney from February 2019 until November 15, 2021  when she was constructively discharged after having been subjected to a gender, age and/or race-based hostile work environment as well as having been subject to retaliation on account of her engagement in activity protected under state and federal antidiscrimination laws.

2. Defendant McCleery Law Firm, LLC is an Ohio limited liability company.

3. Gregory J. McCleery in the owner and managing attorney of Defendant..

4. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* ("Title VII").

5. At all times relevant hereto, Defendant employed and/or employ more than 15 employees so as to be covered by and subject to Title VII.

1

6. Ms. DeRamus brings claims against Defendant based on the gender-based and race-based discrimionation, as well as retaliation for having engaged in activity protected under Title VII, all of which created a hostile work environment she endured in the workplace.

7. This Court has jurisdiction over Ms. DeRamus's Title VII claims by virtue of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.*

8. This Court has jurisdiction over Ms. DeRamus' retaliation claims by virtue of 42 U.S.C. 42 U.S.C. §2000e-3.

9. Venue is proper in this Court as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

**COUNT I (TITLE VII SEX AND RACE DISCRIMINATION)**

10. Plaintiff restates the allegations contained in the foregoing paragraphs of this Complaint as if fully restated herein.

11. In February 2019 Ms. DeRamus was hired as an attorney to work in the Defendant law firm McCleery Law Firm, LLC.

12. Beginning in August 2020, Greg McCleery, the owner of Defendant, began to question her about the hours she worked, and in particular her start time.

13. Upon her hire in February 2019, the office did not have strict work hours, especially for the attorneys, but suggested a 9:00 a.m.-5:00 p.m. workday with one hour for lunch. The handbook was void of specific work hours. Ms. DeRamus was the only Black, female over-40 attorney at the firm. One black male was hired in August 2019 and the HR manager thought it "funny" to name a shared work file after him as "[..] is my test monkey today.xlsm." Although the attorney addressed the matter, the file name still appears when the shared file is accessed. He was subsequently terminated alleging a lack

of work sue to the pandemic start in March 2020. Ms. DeRamus was offended by the reference to black employees as test monkeys, as the term has historically racist connotations. It became challenging for Ms. DeRamus to navigate a work environment which sees racial tropes as amusing.

14. Sometime in August 2020, the owner of the firm, Greg counselled her because she was arriving at the workplace past the suggested 9:00 a.m. start time. He informed her that support staff were complaining about her start time after 9:00 a.m.. Ms. DeRamus informed Mr. McCleery that she frequently worked through lunch, worked well past 5:00 p.m., often worked on weekends and suffered from insomnia. She further explained that scheduled court hearings required her to extend her day beyond 9:00 a.m.-5:00 p.m. to account for travel time. He did not discuss any accommodation or "comp time" nor did he consider the significant amount of time she was required to work to meet the the expected number of billable hours and demands of scheduled hearings.

15. On or about October 22, 2020, Ms. DeRamus received an email from Defendant's human resources manager, Ashley McCleery, who mandated that Ms. DeRamus needed to make a written commitment to the new office hours policy. Ms. DeRamus replied that her position was not suitable to a typical 9:00 a.m. 5:00 p.m. workday, as her assigned cases required her to practice in a multi-county area with required regular travel to courts, as well as long work days to meet the needs of her assigned clients.

16. Later in the day on October 22, 2020 in an email, Mr. McCleery acknowledged Ms. DeRamus's long work hours, talents and experience and that "we remain fully satisfied with your performance with our clients, and financial affairs are stable and satisfactory." He shared that her relationships with him and other attorneys (3 white males one of

3

whom is a contract attorney) were respectful and satisfactory. However, instead of addressing the work schedule, Mr. McCleery made reference to complaints and allegations made by former support staff (all white) against Ms. DeRamus that he chose not to bring to her attention to avoid discord. He provided her written instructions that her interactions with support staff were to be "… gentle and constructive." He also stated that any pay increase would be deferred as long as Ms. DeRamus was non-compliant and absent a suitable explanation on the extended workday.

17. On October 23, 2020 Ms. DeRamus emailed Mr. McCleery seeking clarification of her alleged "non-compliance" and "discord" toward support staff. She also attempted to provide clarity in light of the accusations. She informed him that support staff did not like taking direction from her. She informed him that the manner in which male attorneys treated the support staff was no different than the manner in which she treated the support staff.

18. Mr. McCleery responded with more instructions on how she should behave in the workplace.

19. On October 30, 2020 without benefit of a formal performance review process, Ms. DeRamus was informed by email that she would be required to meet benchmarks including:

- Minimum quarterly billing requirements (I already consistently met or exceeded the minimum requirements and qualified for and/or received bonuses.),
- Teamwork (per comments from support staff and colleagues),

- Follow firm procedures (there would be frequent changes without benefit of notice, training or feedback),
- Client satisfaction (via online reviews), and
- Commit to extending the work day (regardless to the number of hours actually worked);.

in order to qualify for any increase in salary.

20. To the best of her knowledge, her white colleagues were not under such or any requirements for a pay increase. A white male colleague who only received a license to practice law in May 2019, received a raise of about $2,000.00 without a formal performance review or conversation about performance, even though he had not met nor exceeded the minimum quarterly billing requirements since his hire in June 2019.

21. On or about November 18, 2020, Defendant hired a paralegal (white male) to assist the attorneys. Ms. DeRamus was specifically informed by Mr. McCleery, that she could not utilize the paralegal until he was fully trained and that she would be informed when that occurred. However, Ms. DeRamus' colleagues, began using the paralegal for legal research, document preparation, and case management. When Ms. DeRamus gave him and other support staff tasks, she was told that she was not authorized to do so and that any needed assistance should be filtered exclusively through a paraprofessional. None of the other attorneys were under the same restrictions. Moreover, Ms. DeRamus was, again, informed during an all staff meeting that she specifically was not to utilize the paralegal until otherwise informed. No other attorney was given such instruction. Also, an office clerk was given full authority to review and approve Ms. DeRamus's legal motions and other filings before such may be filed with a court.

22. Ms. DeRamus regulary experienced disparate treatment from white support staff prior to and after the October 2020 incidents, while her white colleagues were treated much more favorably and were not subject to the same complaints or restrictions to utilize support staff. This was yet another challenge for Ms. DeRamus to navigate a work environment which treats older African America females less favorably that younger white colleagues.

23. Prior to the COVID-19 shutdown in March 2020, Ms. DeRamus had grown accustomed to performing her own administrative tasks to avoid being accused of misconduct and/ or held responsible for the mistakes of support staff, which could be detrimental to her clients and could impact her ability to practice law. Her interactions with support staff became minimal at best.

24. Despite the disparate treatment and marginalization she was subjected to, Ms. DeRamus continued to perform to the best of her ability through long hours, consistently meeting or exceeding quarterly billings and no accommodation for her medical condition.

25. On March 22, 2021, Ms. DeRamus filed this Charge of Discimination with the U.S. Equal Employment Opportunity Commission.

26. On March 25, 2021 she received a formal "coaching" regarding the number of clients she was representing, the number of new client intakes she was handling and the filing of papers in a particular case as well as her communications with firm management regarding case loads.

27. Since March 26, 2021 she has received over 36 formal coachings as well as progressive discipline for matters which truly do not bear on the outcome of client matters.

28. Comparable male colleages are not held to the same level of performance and have not received the same level of counsellings or discipline she has been subjected to on account of their conduct in the workplace.

29. The discipline Ms. DeRamus has been subjected to is pretextual and has, and continues to be issued on account of her filing a charge of discrimination with the US. EEOC. In fact, on or about March 30, 2021, when informed such discipline was stressful and debillitating, Mr. McCleery stated that it would continue as long as there was an EEOC filing.

30. On or about June 21, 2021, an alleged client name, "dumb, dumber" was intentionally created by Ashley McCleery in Ms. DeRamus's client ledger to cause embarrassment and humiliation as the client ledger is visible to all employees. Such alleged file remained on Ms. DeRamus's ledger until it was removed by a part-time, summer intern several months later.

31. On or about June 30, 2021, Greg McCleery, Ashley McCleery, and Sarah Sidel scheduled a meeting with her to discuss how her legal practice may be supported, including new office furniture. After several weeks, some of the offices, including support staff, had received updated furniture and electronics. However, Ms. DeRamus's office remained unchanged up to the constructive discharge on November 15, 2021.

32. Ms. DeRamus had specifically stated that her birthday was not to be celebrated on July 23rd. However, on or about July 21, 2021, a support staff person felt it important to celebrate Ms. DeRamus's birthday two days early since Ms. DeRamus had intentionally scheduled vacation days on July 22-23, 2021.

33. Mr. McCleery expected all employees to work in an unhealthly work environment for several months when a backed-up sewer line caused a foul odor in the building. The odor would be worse at or in Ms. DeRamus's office area and grew progressively worse over time. When Ms. DeRamus complained and informed staff that the odor was causing a headache, she left as the other attorneys would do to avoid the stench. Upon her return the next day, Mr. McCleery and Ashley McCleery informed Ms. DeRamus that no permission had been given, even though no other attorney received such a reprimand or required permission under the circumstances.

34. On or about November 11, 2021, McCleery reminded Ms. DeRamus that she was the only staff member not to communicate directly with support staff, which was not required of any other attorney or staff.

35. On or about November 14, 2021, Mr. McCleery requested Ms. DeRamus to commit to remain at the firm or provide an extended separation period – none of which were asked or required of former colleagues. A pay increase was also mentioned upon quarterly satisfactory compliance to the following conditions:
    a. Increase average billable hours by about 2 hours per day
    b. "No further problems"
    c. Positive client reviews with no client or legal issues
    d. Additional oversight and training
    e. that a conversation may take place regarding a pay increase.

36. Ms. DeRamus was not afforded the use of support staff and overall treated less favorably than her younger white male and female colleagues in the workplace all on account of her race, sex and or in further retaliation for her engagement in protected activity.

37. Upon information and belief Ms. DeRamus' base salary was lower that that of comparable attorneys who have worked with or currently work with the firm.

38. Despite the severe emotional distress caused by the disparate, discriminatory and retaliatory treatment in the workplace by the Mr. McCleery, Mrs. McCleery and the disparate treatment from support staff that was fostered and condoned by Mr. McCleery and Mrs. McCleery, Ms. DeRamus continued to represent her clients and met and exceeded the minimum number of billable hours required.

39. Due to the persistent disciminatory and retaliatory treatment all of which created a hostile work environment all of which became unbearable, Ms. DeRamus was constructively discharged and saw no choice but to resign – she was constructively discharged on November 15, 2021.

40. This Court has jurisdiction over Plaintiff's claims under federal Title VII, as amended, 42 U.S.C. §§2000e, *et seq.*

41. Plaintiff timely filed a charge of discrimination against Defendant with the US, EEOC on March 22, 2021 in which she asserted discrimination based on race, sex, and age; said charge is attached hereto (and incorporated by reference herein) as Plaintiff's Exhibit "A" ("PXA").

42. After she was constructively discharged, Plaintiff timely filed an amended charge of discrimination against Defendant with the US, EEOC on December 30, 2021 in which she asserted discrimination based on race, sex, and age and retaliation; said charge is attached hereto and incorporated by reference herein as Plaintiff's Exhibit "B" ("PXB").

43. The US EEOC issued a Notice of Right to Sue on April 26, 2022. A copy of said notice is attached hereto as Plaintiff's Exhibit "C" ("PXC"), and is hereby fully incorporated by

reference herein.

44. By reason of the foregoing acts and omissions of discrimination in the form of gender and race-based based disparate treatment and gender and race- based hostile work environment fostered and condoned by the Defendant in violation of Title VII, Ms. DeRamus has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

**Count II (Title VII Retaliation)**

45. Plaintiff restates the allegations contained in the foregoing paragraphs of this Complaint as if fully restated herein.

46. On March 22, 2021, Ms. DeRamus filed this Charge of Discimination with the U.S. Equal Employment Opportunity Commission.

47. On March 25, 2021 she received a formal "coaching" regarding the number of clients she was representing, the number of new client intakes she was handling and the filing of papers in a particular case as well as my communications with firm management regarding my case load.

48. Since March March 2021 she had received over 36 formal coachings as well as progressive discipline for matters which truly do not bear on the outcome of client matters.

49. The discipline Ms. DeRamus has been subjected to is pretextual and has, and continues to be issued on account of her filing a charge of discrimination with the US. EEOC. In fact, on or about March 30, 2021, when informed such discipline was stressful and debillitating, Mr. McCleery stated that it would continue as long as there was an EEOC filing.

10

50. On or about June 21, 2021, an alleged client name, "dumb, dumber" was intentionally created by Ashley McCleery in Ms. DeRamus's client ledger to cause embarrassment and humiliation as the client ledger is visible to all employees. Such alleged file remained on Ms. DeRamus's ledger until it was removed by a part-time, summer intern several months later.

51. On or about June 30, 2021, Greg McCleery, Ashley McCleery, and Sarah Sidel scheduled a meeting with her to discuss how her legal practice may be supported, including new office furniture. After several weeks, some of the offices, including support staff, had received updated furniture and electronics. However, Ms. DeRamus's office remained unchanged up to the constructive discharge on November 15, 2021.

52. Ms. DeRamus had specifically stated that her birthday was not to be celebrated on July 23rd. However, on or about July 21, 2021, a support staff person felt it important to celebrate Ms. DeRamus's birthday two days early since Ms. DeRamus had intentionally scheduled vacation days on July 22-23, 2021.

53. Mr. McCleery expected all employees to work in an unhealthly work environment for several months when a backed-up sewer line caused a foul odor in the building. The odor would be worse at or in Ms. DeRamus's office area and grew progressively worse over time. When Ms. DeRamus complained and informed staff that the odor was causing a headache, she left as the other attorneys would do to avoid the stench. Upon her return the next day, Mr. McCleery and Ashley McCleery informed Ms. DeRamus that no permission had been given, even though no other attorney received such a reprimand or required permission under the circumstances.

11

54. On or about November 11, 2021, McCleery reminded Ms. DeRamus that she was the only staff member not to communicate directly with support staff, which was not required of any other attorney or staff.

55. On or about November 14, 2021, Mr. McCleery requested Ms. DeRamus to commit to remain at the firm or provide an extended separation period – none of which were asked or required of former colleagues. A pay increase was also mentioned upon quarterly satisfactory compliance to the following conditions:

    a. Increase average billable hours by about 2 hours per day
    b. "No further problems"
    c. Positive client reviews with no client or legal issues
    d. Additional oversight and training
    e. that a conversation may take place regarding a pay increase.

56. Ms. DeRamus was not afforded the use of support staff and overall treated less favorably than her younger white male and female colleagues in the workplace all on account of her race, sex and or in further retaliation for her engagement in protected activity.

57. Upon information and belief Ms. DeRamus' base salary was lower that that of comparable attorneys who have worked with or currently work with the firm.

58. Despite the severe emotional distress caused by the disparate, discriminatory and retaliatory treatment in the workplace by the Mr. McCleery, Mrs. McCleery and the disparate treatment from support staff that was fostered and condoned by Mr. McCleery and Mrs. McCleery, Ms. DeRamus continued to represent her clients and met and exceeded the minimum number of billable hours required. However, the events of November 14, 2021 made an unbearable workplace simply intolerable and left Ms.

DeRamus with no choice but to leave the employment of Defendant before she suffered more emotional harm and damage to her reputation in the legal community.

59. Due to the persistent disciminatory and retaliatory treatment all of which created a hostile work environment all of which became unbearable, Ms. DeRamus was constructively discharged and saw no choice but to resign – she was constructively discharged on November 15, 2021.

60. Comparable male colleages were not held to the same level of performance and had not received the same level of counsellings or discipline she was subjected to on account of their conduct in the workplace.

61. The discipline Ms. DeRamus has been subjected to is pretextual and wasissued on account of her filing a charge of discrimination with the US. EEOC.

62. Ms. DeRamus was not afforded the use of support staff and overall treated less favorably than her younger white male and female colleages in the workplace all on account of her race, sex and or in further retaliation for my engagement in protected activity.

63. Upon information and belief Ms. DeRamus' base salary was lower that that of comparable attorneys who have worked with or currently work with the firm.

64. Despite the severe emotional distress caused by the disparate, discriminatory and retaliatory treatment in the workplace by the Mr. McCleery, Mrs. McCleery and the disparate treatment from support staff that was fostered and condoned by Mr. McCleery and Mrs. McCleery, Ms. DeRamus continued to represent her clients and met and exceeded the minimum number of billable hours required.

65. Due to the persistent disciminatory and retaliatory treatment all of which created a hostile work environment all of which became unbearable, Ms. DeRamus was constructively discharged and saw no choice but to resign, effective November 15, 2021.

66. This Court has jurisdiction over Plaintiff's claims under federal Title VII, as amended, 42 U.S.C. §§2000e, *et seq.*

67. After she was constructively discharged, Plaintiff timely filed an amended charge of discrimination against Defendant with the US, EEOC on December 30, 2021 in which she serted discrimination based on race, sex, and age and retaliation; said charge is attached hereto and incorporated by reference herein as Plaintiff's Exhibit "B" ("PXB").

68. The US EEOC issued a Notice of Right to Sue on April 26, 2022. A copy of said notice is attached hereto as Plaintiff's Exhibit "C" ("PXC"), and is hereby fully incorporated by reference herein.

69. By reason of the foregoing acts and omissions of retaliation by the Defendant against Ms. DeRamus on account of her engagement in activity protected under Title VII all in violation of Title VII, Ms.DeRamus has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

### Count III (Ohio Civil Rights Act – Sex and Race Discrimination)

70. Plaintiff restates the allegations contained in the foregoing paragraphs of this Complaint as if fully restated herein.

71. Defendant is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA..

72. This Court has pendent, supplemental, and/or ancillary jurisdiction Ms. DeRamus' Ohio statutory claims by virtue of 28 U.S.C. §1367.

73. By reason of the foregoing acts and omissions of sex and race discrimination all of which created a sex and race based hostile work environment fostered and condoned by Defendant, all in violation of the OCRA, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages.

**Count IV (Ohio Civil Rights Act – Retaliation)**

74. Plaintiff restates the allegations contained in the foregoing paragraphs of this Complaint as if fully restated herein.

75. Defendant is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA.

76. This Court has pendent, supplemental, and/or ancillary jurisdiction Ms. DeRamus' Ohio statutory claims by virtue of 28 U.S.C. §1367.

77. Defendant retaliated against Plaintiff on account of her engagement in the aforementioned protected activity in the form of filing a charge of discrimination with the U.S. EEOC and her complaints of race and sex based disparate treatment in the workplace, all in violation of R.C. 4112.02(I).

78. By reason of the foregoing acts and omissions of retaliatory conduct by Defendant in violation of the OCRA, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages.

WHEREFORE, Plaintiff demands:

   **A.** Trial by jury on all Counts and issues of law, followed by bench trial to the Court on

remaining issues of equity, if any;

B. Judgment for Plaintiff and against the Defendant on Counts I, II, III and IV or said sums of Back and Front Pay and Compensatory and Punitive damagesand/or reasonable attorneys' and expert witness' fees and costs under 42 U.S.C. §1988, as to Plaintiff's Title VII claims;

C. Judgment for pre-judgment interest on any and all damage awards, plus costs; and

D. Such other and further relief and redress as is just and equitable under the circumstances

Respectfully submitted,

s/ John F. Myers
John F. Myers #0032779
234 Portage Trail
Cuyahoga Falls, Ohio 44221
330-819-3695
330-535-0850
johnmyerscolpa@gmail.com


s/ Billi Copeland King
Billi Copeland King #0083422
1481 S. Hawkins Ave
Akron, OH 44320
330-990-4911
info@billicopeland.com

Attorneys for Plaintiff Monica D. DeRamus