EEOC Form 5 (11/09)

| AMENDED CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>532-2021-00284 |
|---|---|---|

**OHIO CIVIL RIGHTS COMMISSION** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**MS. MONICA D DERAMUS** | Home Phone<br>(216) 324-2644 | Year of Birth<br>1961 |
|---|---|---|

Street Address: **1198 SCHNEIDERS CROSSING ROAD NORTHWEST, A, DOVER, OH 44622**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**MCCLEERY LAW FIRM, LLC** | No. Employees, Members<br>Under 15 | Phone No.<br>330<br>(230) 407-1418 |
|---|---|---|

Street Address: **203 FRONT AVE SE, NEW PHILADELPHIA, OH 44663**

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 08-01-2020  Late: 09-02-2021  11/26 MDD

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above-named Respondent in February 2019. My current position is Attorney.

Beginning in August 2020, I was questioned by Greg McCleery, Owner, about my start time. In October 2020, Mr. McCleery brought up complaints and allegations from former support staff. Mr. McCleery also gave me different benchmarks to meet in order to receive a pay increase and I was not authorized to use the newly hired paralegal. My younger White, male colleagues, were not subjected to the same terms and conditions of employment.

I believe I was discriminated against because of my race, Black, and my gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, (Title VII) and because of my age, 59, in violation of the Age Discrimination in Employment Act of 1967, as amended, (ADEA).

I want this amended charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

[signature] 12/30/21

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Monica D. DeRamus – Amended Charge of Discrimination
EEOC Charge No. 532-2021-00284

Particulars (Cont'd.)

1. I am submitting this amended charge to add a retaliation claim and to provide additional information relative to the initial charge I filed.

2. Sometime in August 2020, the owner of the firm, Mr. McCleery, addressed my coming in past the suggested 9:00 a.m. start time. He told me others were complaining and began coming in after 9:00 a.m. (The others who complained were white support staff.) I shared in confidence that I suffered from insomnia, worked through lunch, worked well past 5:00 p.m. and often on weekends. He did not discuss any accommodation nor did he consider the significant amount of time I put in to achieve the billable hours expected.

3. On or about October 22, 2020, I received an email from the HR Manager, Ashley McCleery (Mr. McCleery's wife who is not an attorney), that I needed to make a written commitment to the new office hours policy as: 8:00 a.m. to 4:30 p.m., 8:30 a.m.- 5:00 p.m. or 9:00 a.m. - 5:30 p.m. I committed to a 9:00 a.m. start, but did not want to be held accountable to a 5:30 p.m. close for the following reasons: 1) my work day was already long – working through lunch, staying past hours, driving to/from ~ 15 courthouses in central and northern Ohio; 2) court hearings may end early or late without breaks and I needed the flexibility to going directly home instead of back to the office; and 3) I am a licensed attorney, often at the mercy of the court, which may require me to travel up to 2 hours travel time for a 9:00 a.m., but the firm benefits through the billable hours. Comp-time was not available.

4. On or about Thursday, October 22, 2020 at 6:33 p.m., via email, Mr. McCleery acknowledged my long work hours, talents and experience and that "we remain fully satisfied with your performance with our clients, and financial affairs are stable and satisfactory." He shared that my relationships with him and other attorneys (3 white males, one of whom is a contract attorney) were respectful and satisfactory. However, instead of addressing the work schedule, Mr. McCleery made reference to complaints and allegations made by former support staff (all white) against me that he chose not

to bring to my attention to avoid discord. The email provided instructions that my interactions with support staff are to be "… gentle and constructive." He agreed that a 9:00 a.m. -5:00 p.m. work schedule was acceptable, but a pay increase would be deferred as long as I was non-compliant and absent a suitable explanation on the extended work day.

5. My response on October 23, 2020 at 4:42 p.m. sought clarification of my "non-compliance" and "discord" toward support staff. I also attempted to provide clarity in light of his accusations. I focus on client and case management, which has proven to be problematic for some, specifically support staff hired by the firm. It appeared to me that support staff did not like taking direction from me. From my observations, the manner in which male attorneys treated the support staff was no different than the manner in which I treated the support staff. I simply wanted tasks performed in a timely manner so that I could satisfy the needs of my clients.

6. Another response from Mr. McCleery on October 23, 2020 at 9:30 p.m. provided more instruction on my behavior toward support staff, and how I should think and feel in performing such behaviors.

7. I took these comments to be based upon my gender or race, as the other attorneys in the office were not subjected to such complaints by support staff and were not always gentle and constructive in their communications with support staff.)

8. An additional email was received from Mr. McCleery on October 30, 2020 at 2:55 p.m. that spelled out regularly scheduled performance reviews for all attorneys to begin on a regular basis. The plan would be rolled out at our next staff meeting scheduled to occur the following week. Such review would consist of a self-evaluation. However, for me to receive a satisfactory evaluation (and thus receive a performance-based raise), I would be required to meet benchmarks (over a 1-2 quarter basis):

    - Minimum quarterly billing requirements (I already consistently met or exceeded the minimum requirements and qualified for bonuses.)
    - Teamwork (per comments from support staff and colleagues)
    - Follow firm procedures (there frequent changes with very little notice, training or opportunity for feedback)

- Client satisfaction (via online reviews)
- Commit to extending the work day (regardless to the number of hours actually worked)

9. No such performance reviews were rolled out at the meeting.

10. To the best of my knowledge, my white colleagues are not under such or any requirements for a pay increase. As a matter of fact, on or about October 15, 2020, I was informed by a less experienced attorney that he had received a raise of about $2,000.00 without any conversation about his performance, even though he has never met or exceeded the minimum quarterly billing requirements since his hire in June 2019.

11. On or about November 18, 2020, the firm hired a paralegal (white male) to assist the attorneys. However, I was specifically informed by Mr. McCleery that I could not utilize the paralegal until he was fully trained and that I would be informed when that occurred. My colleagues, however, began using the paralegal almost immediately for legal research, document preparation, and case management. In my few attempts to utilize him, as well as other support staff, I was immediately chastised that I was not authorized to do so and that any needed assistance should be filtered exclusively through a paraprofessional. None of the other attorneys were under the same restrictions. This was further reinforced during a staff meeting on or about December 8, 2020, when Mr. McCleery explained that the paralegal would be reserved for special projects and legal research at his approval. However, when a colleague mentioned a project to create practice forms, Mr. McCleery took it under advisement, but I was still restricted from working with the paralegal even for the simplest of tasks. The next day, the paralegal resigned citing another opportunity had become available.

12. Upon my hire in February 2019, the office did not have strict work hours, especially for the attorneys, but suggested a 9:00 a.m.-5:00 p.m. workday with one hour for lunch. The handbook is void of specific work hours. I was the only Black, female over-40 attorney at the firm. One black male was hired in August 2019 and the HR manager thought it "funny" to name a shared work file after him as "[..] is my test monkey today.xlsm." Although the attorney addressed the matter with Respondent,

the file name continued to appear when the shared file is accessed. He was subsequently terminated alleging lack of work due to the declared pandemic in March 2020. Another Black female over-40 attorney was hired ~ July 2020, but soon left because of the new strict work schedule, long commute to/from her Youngstown home and various courthouses on a daily basis with no comp-time, and being constantly reported to management for behaviors deemed "unprofessional" by white, female support staff.

13. It has been very challenging to navigate a work environment which sees racial tropes as being funny, being constantly reported to management for alleged unprofessional behaviors, and limited access to available resources to perform work responsibilities.

14. I have experienced disparate treatment from support staff prior to and after the October 2020 incidents, while my white colleagues have not endured such treatment nor to the best of my knowledge, has management entertained complaints lodged to management against my colleagues.

15. Prior to the COVID-19 shutdown in March 2020, I had grown accustomed to performing my own administrative tasks to avoid being accused and/or held responsible for the mistakes of support staff, which I feared would be detrimental to my ability to practice law in the state. As such, my interactions were minimal at best – an occasional court filing, document mailing or phone call to request information. I have been maligned, falsely accused of behaviors and attitudes that I did not exhibit, and avoided a chance to work through any alleged conflicts.

16. In spite of everything, I continued to perform to the best of my ability through long hours, consistently meeting or exceeding quarterly billings, and no accommodation for a medical condition. I do recall an incident of a white support staffer asking HR if she could leave early on certain days so that her child could participate in sporting practice. Such accommodations were granted.

17. I filed this Charge of Discrimination on March 22, 2021.

18. On March 25, 2021 I began receiving formal "coaching" regarding the number of clients I was representing, the number of new client intakes I was handling and the filing of court documents papers in a particular case as well as my communications

with firm management regarding my case load. Prior to such time, no such written "coaching" had been provided.

19. I have since received approximately 36 formal coachings as well as progressive discipline for matters which truly do not bear on the outcome of client matters.

20. I am aware that my male comparable colleagues are not held to the same level of scrutiny and performance standards and have not received the same level of counselling or discipline I have been subjected to on account of their conduct in the workplace. Further, a white male under 40 attorney was provided a raise in approximately June 2020 without the firm conducting a performance review or requirement that quarterly minimum revenue being met. I did not receive such a raise and was informed in October 2020 that any raise provided to me would be based on a 360-performance review, strict adherence to firm policies and procedures and management to receive no further complaints from support staff. I believe that I am the only employee that has not received a performance review to date.

21. I contend the discipline is pre-textual and has, and continues to be issued to me on account of filing a charge of discrimination in the workplace.

22. I believe that I have not been afforded the use of support staff and contend that I have been denied the assistance of support staff on account of my race, sex and or in further retaliation for my engagement in protected activity.

23. Upon information and belief my base salary is lower than that of comparable attorneys who have worked with or currently work with the firm.

24. Despite the severe emotional distress, the manner in which I am treated in the workplace by the law firm's management, I have continued to represent my clients and build relationships with opposing counsel and the court's in which I represent my client. I am well respected by the judges, court personnel and colleagues in the community. I also continue to meet the minimum billable hours required and receive bonuses for doing so.

25. Despite my filing of the charge of discrimination, Respondent has continued to treat me differently on account of my gender, sex, age and/or in retaliation for having engage in protected activity.

26. Respondent has continued to scrutinize my work product, to hold me to disparate performance and attendance standards and to counsel me on how I conduct my representation of clients.

27. He subjected me to new systems and procedures that were impractical or did not work. I was required to take subject area tests developed by Respondent. I have not received feedback on the results or any alleged training as a result of such testing.

28. Due to the unbearable retaliatory and discriminatory treatment I have been subjected to, practicing law under those conditions has become unbearable. I saw change in his treatment of me since filing the charge of discrimination, in fact his treatment of treatment of me continued to worsen. On or about November 8, 2021, I began to receive a series of emails from Mr. McCleery alleging that I had disciplined a member of support staff, ignored internal emails, that I was restricted from direct communication with support staff and to make a formal declaration of my intent to remain with the firm. On November 15, 2021, I received an email (dated November 14, 2021) that required me to increase my monthly billings, strictly adhere to all company policies/policies, avoid any further complaints or allegations from support staff and/or clients, and a request to remain at the firm for an extended period of time. Such adherence may result in a conversation regarding a potential raise sometime after first quarter 2022. As a result, I tendered my resignation on November 15, 2021, effective November 26, 2021. The only reason I remained was to make sure that the matters I was handling for clients of Respondent were handled appropriately.

29. Respondent further attempted to avoid paying my unused vacation time. Respondent further avoided payment of holiday pay for Thanksgiving 2021 even though my effective termination date was after the holiday.

I declare under penalty of perjury that the above is true and correct.

_____    12/30/21
Signature                    Date